**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **CHRISTI R. RUSCH,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 2:12-CV-00128** |
| | § | |
| **UNITED HEALTH GROUP INC.,** | § | |
| aka/dba United Healthcare Services, Inc., | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Before the Court is Defendant's Motion for Complete Summary Judgment. (D.E. 45.) For the reasons set forth below, Defendant's motion is GRANTED IN PART and DENIED IN PART. Plaintiff's civil claim for statutory non-disclosure penalties under 29 U.S.C. § 1132(c)(1) is RETAINED. Plaintiff's remaining causes of action are DISMISSED WITH PREJUDICE.

## INTRODUCTION

This case arises out of a dispute between Plaintiff Christi R. Rusch and Defendant United Health Group Inc. (UHG) over Plaintiff's eligibility for short-term disability (STD) and long-term disability (LTD) benefits under UHG's employer-sponsored disability benefits plans (the STD Plan and LTD Plan) in which Plaintiff participated as an employee. The STD Plan and the LTD Plan are subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), which permits a plan participant or beneficiary to seek redress in federal district court. *See* 29 U.S.C. § 1132(a)(1). Plaintiff brought suit in this Court alleging the following five causes of action against Defendant:

1.  Claim for STD and LTD benefits under 29 U.S.C. § 1132(a)(1)(B);

2.  Breach of fiduciary duty under 29 U.S.C. § 1132(a)(3);

3.  Claim for monetary non-disclosure penalties under 29 U.S.C. § 1132(c)(1);

4.  Claim for criminal penalties under 18 U.S.C. § 1027 for failure to disclose to Plaintiff the STD and LTD Plans and Summary Plans when requested; and

5.  Claim for criminal penalties under 29 U.S.C. § 1131(a) for failure to disclose to Plaintiff the STD and LTD Plans and Summary Plans when requested.

(*See* Plaintiff's First Supplemental Complaint, D.E. 34 ¶¶ 23–41.)  Defendant argues that all five causes of action must be dismissed with prejudice because there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law. (D.E. 45 at 11–12.)

## SUMMARY JUDGMENT EVIDENCE

The majority of the summary judgment evidence comes from the joint administrative record, which was compiled by the parties and submitted to the Court.  In the case at hand, a determination of ineligibility under the STD Plan was made by the independent Claims Administrator, SedgwickCMS (Sedgwick), which is responsible for making benefits determinations and reviewing denied claims.  The administrative record consists of the Plans and those documents and records submitted to the Claims Administrator for review.  The administrative record has been Bates-stamped for ease of identification.  All citations to the administrative record herein are preceded by the letters UHG.  The Summary Plan Description can be found at UHG 1–22; the LTD Plan can be found at UHG 23–53; the STD Plan can be found at UHG 54–75; and the various medical reports, correspondence, and other documents relating to Plaintiff's STD benefits claim and appeal can be found at UHG 76–414.  The facts of the case are, for the most part, undisputed.  What follows is a brief summary of the case.

Plaintiff was employed by Defendant as an Employee Assistance Program (EAP) Supervisor. (UHG 146.)  This is a home-based, sedentary position. (UHG 146, 307.)  The last

day that Plaintiff worked before filing a claim for disability benefits was November 17, 2008. (UHG 270.)  Plaintiff made a claim for STD benefits on November 21, 2008. (UHG 85–86.)

Plaintiff applied for STD benefits based on swelling and pain in her leg and a lumbar strain. (UHG 321.)  Plaintiff's physician, Dr. Jon Chancellor, initially estimated that Plaintiff would be able to return to work on December 22, 2008. (UHG 173.)  Plaintiff's claim for STD benefits was initially approved through December 16, 2008, and then extended through December 21, 2008. (UHG 88–90.)

Plaintiff visited Dr. Chancellor's office again on December 30, 2008. (UHG 191.) Following that visit, Dr. Chancellor diagnosed Plaintiff with the following conditions: (1) stress fracture to her left foot; (2) hypothyroidism with myxedema; (3) moderate, recurrent depression; (4) L5-S1 acute disc herniation with radiculopathy; (5) acute myofascial strain; (6) bilateral carpal tunnel syndrome; and (7) migraine headaches. (UHG 191.)  Nonetheless, Dr. Chancellor stated that he optimistically anticipated Plaintiff's return to work on January 5, 2009. (UHG 191.)  Plaintiff also provided documentation from Robert R. Vranes, a podiatrist, who treated Plaintiff's foot and placed her in a walking boot. (UHG 196–201.)   The Claims Administrator extended Plaintiff's STD benefits through January 5, 2009. (UHG 91–92.)

After another office visit on January 6, 2009, Dr. Chancellor determined that Plaintiff could return to work on a part-time basis. (UHG 203–08.)  The Claims Administrator approved part-time STD benefits:  Plaintiff would return to work 4 hours per day through January 25, 2009, and then increase her work to 6 hours per day thereafter, until returning to work full-time on February 2, 2009. (UHG 93.)  Additional STD benefits were subsequently approved through February 8, 2009 due to a surgery on January 28, 2009. (UHG 94.)

Plaintiff returned to full-time work in her home-based sedentary position on February 9, 2009. (UHG 293.)  Plaintiff continued to work full-time for almost a month until March 2, 2009, when she claimed she was no longer able to work full-time due to her disability. (UHG 292.) Plaintiff submitted documentation from Dr. Chancellor indicating that she was only able to work part-time from March 9, 2009 through April 9, 2009. (UHG 210–13.)  This new claim for STD benefits was approved through March 27, 2009, and then extended until April 24, 2009. (UHG 98, 101.)  No further extensions were granted.

On May 4, 2009, an independent review of Plaintiff's disability claim was performed by Dr. Howard Sturtz, a physician advisor for the Claims Administrator. (UHG 104–06.)  Based on the medical documentation provided to him, Dr. Sturtz concluded that there were no objective clinical findings or medical evidence indicating that Plaintiff was disabled. (UHG 105.) Dr. Sturtz concluded that Plaintiff could return to work as an EAP Supervisor in a sedentary position. (UHG 104.)  On May 7, 2009, the Claims Administrator notified Plaintiff that her STD benefits claim was denied beginning April 25, 2009 as "the medical information submitted does not demonstrate that you are unable to perform the material duties of your own occupation . . . ." (UHG 107.)

Plaintiff appealed the denial of her STD benefits claim to the Claims Administrator. (UHG 121.)  Plaintiff submitted additional medical documentation to the Claims Administrator regarding her disability. (UHG 122–44.)  The Claims Administrator forwarded the medical documentation regarding Plaintiff's claim to two independent medical specialists for review— Robert Polsky, M.D. and Jamie Lee Lewis, M.D. (UHG 150–52, 158–60, 165–66.)  After reviewing the medical records and the findings and recommendations of the independent medical specialists, the Claims Administrator determined that there was no objective medical evidence to

4

support a finding that Plaintiff was disabled under the STD Plan. (UHG 165–66.)  The denial letter additionally informed Plaintiff of her right to file a civil action under ERISA. (UHG 166.) Plaintiff filed her claim with this Court on April 30, 2012. (D.E. 1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In reaching its decision, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

The movant has the initial burden of showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Once the movant has met its initial burden, the burden then shifts to the non-moving party to demonstrate that summary judgment is not appropriate. *Rivera*, 349 F.3d at 247.

In meeting its burden, the non-movant must establish that there are material, controverted facts precluding summary judgment. *Anderson*, 477 U.S. at 248–49.  The non-movant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment").  Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23.

## ANALYSIS

Defendant argues that Plaintiff's claims should be dismissed in their entirety for the following reasons: (**A**) Plaintiff's cause of action to recover STD and LTD benefits is time-barred; (**B**) Even if Plaintiff's LTD benefits claim is not time-barred, Plaintiff failed to exhaust her administrative remedies; (**C**) Plaintiff failed to demonstrate that the Claims Administrator abused its discretion; (**D**) Plaintiff's cause of action for breach of fiduciary duty is duplicative; (**E**) Plaintiff's cause of action for statutory non-disclosure penalties fails because Defendant was not aware of Plaintiff's request, Defendant produced the STD and LTD Plans (albeit more than two years late), and Plaintiff was not prejudiced by the failure to disclose because she had access to the Plans online; (**F**) Plaintiff's causes of action for criminal penalties fails because there is no evidence that Defendant acted willfully or knowingly; and (**G**) Plaintiff's estoppel claim fails because it was not asserted in the First Supplemental Complaint.  The Court considers each of these arguments below.

**A.      Contractual Limitations Periods Under STD and LTD Plans**

Defendant argues that Plaintiff's claims to recover STD and LTD benefits are time-barred by the applicable contractual limitations periods set forth in the STD and LTD Plans. (D.E. 45 at 19–24.)  Plaintiff counters that the STD and LTD Plans were never provided to Plaintiff, and therefore, Plaintiff never had notice of the contractual limitations periods. (D.E. 62 at 8–10.)

ERISA provides no specific limitations period for bringing a cause of action. *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005).  Where federal law provides no specific limitations period, the Court borrows the state statute of limitations that would be applied in the most analogous cause of action. *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992).   The most analogous cause of action to Plaintiff's claims for Plan benefits would be a breach of contract claim, which is subject to a four-year limitations period under Texas law. *Id.*  However, where an insurance plan designates a shorter limitations period, that lesser period will govern, provided it is reasonable. *See Harris*, 426 F.3d at 337; *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303–04 (11th Cir. 1998); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 874–75 (7th Cir. 1997).

The STD and LTD Plans impose a six-month limitations period from the time the administrative claim and appeals procedure is complete for the filing of an action under 29 U.S.C. § 1132(a) to collect benefits allegedly owed under the Plans. (UHG 17.)  The STD and LTD Plans additionally impose a thirty-month contractual limitations period for the filing of a civil action from the date on which the claimant knew or reasonably should have known the principal facts upon which her claim is based, regardless of the date the administrative claim and appeal were filed. (UHG 17.)   The Court finds that these contractual limitations periods are

reasonable. *See Dye v. Assocs. First Capital Long-Term Disability Plan*, No. 06-41569, 243 Fed. App'x 808, 809–10 (5th Cir. June 14, 2007) (finding a 120-day period was reasonable); *Northlake Reg'l Med. Ctr.*, 160 F.3d at 1303–04 (finding a 90-day contractual limitations period reasonable); *Sheckley v. Lincoln Nat'l Corp.*, 366 F. Supp. 2d 140, 149 (D.Me. 2005) (finding enforcement of a 6-month contractual limitations period reasonable); *Davidson v. Wal-Mart Assocs. Health and Welfare Plan*, 305 F. Supp. 2d 1059, 1074–75 (S.D. Iowa 2004) (finding a 45-day limitations period was reasonable).

The Claims Administrator notified Plaintiff of the denial of her appeal with regard to her claim for STD benefits on August 20, 2009. (UHG 165–66.)  Accordingly, under the contractual limitations period, Plaintiff had until February 20, 2010 to file an action challenging the denial of her STD benefits.  Plaintiff did not file the present lawsuit until April 30, 2012, more than two years after the six-month limitations period expired.  Even applying the more generous thirty-month deadline, Plaintiff's action is still untimely.  Plaintiff should have known the principal facts of her claim, at the very latest, by the time the Claims Administrator denied her appeal on August 20, 2009.  Therefore, the thirty-month limitations period expired on February 20, 2012.  Plaintiff filed the present action on April 30, 2012, more than two months late.

Plaintiff argues that the contractual limitations periods should not apply because Defendant failed to provide her with copies of the Plans, and she was not informed of the limitations periods in the letter denying her appeal. (D.E. 62 at 8, citing UHG 165–66.) Defendant counters that Plaintiff had constructive knowledge, if not actual knowledge, of the contractual limitations provisions because she had access to the STD and LTD Plans while she was Defendant's employee via UHG's HRDirect, available at www.unitedhrdirect.net, or by

calling HRDirect Monday through Friday between 7:00 a.m. and 7:00 p.m. (D.E. 45 at 24–25, citing Coleman Decl., D.E. 45-1.)

The administrative record demonstrates that Plaintiff first made a request for the STD and LTD Plans, through her attorney, on April 19, 2010. (UHG 226.)  By this time, however, the six-month limitations period for filing a claim had already lapsed:  Plaintiff's appeal was denied on August 20, 2009, which gave her until February 20, 2010 to file a lawsuit challenging the denial of benefits.  Thus, Plaintiff cannot argue that she failed to file a claim due to Sedgwick's and/or Defendant's refusal to provide her with copies of the applicable Plans.  Moreover, Plaintiff does not deny that she had access to the Plans through HRDirect.  Accordingly, there is nothing in the record warranting a tolling of the contractual limitations period.

In sum, the Court concludes that the Plans' contractual limitations periods should be enforced with regard to Plaintiff's claim for disability benefits.  Plaintiff's cause of action for STD and LTD benefits under 29 U.S.C. § 1132(a)(1)(B) is therefore DISMISSED.  The contractual limitations periods, however, only apply to Plaintiff's claim for disability benefits. They do not apply to Plaintiff's other causes of action.

**B.      Plaintiff Failed to Exhaust Administrative Remedies Under LTD Plan**

The Fifth Circuit "requires that claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Employees of Santa Fe Intern.*, 215 F.3d 475, 479 (5th Cir. 2000).  Defendant argues that Plaintiff's claim fails because Plaintiff did not exhaust her administrative remedies. (D.E. 45 at 25–27; D.E. 64 at 10–12.)  The Court agrees.

First, Plaintiff argues that there is no requirement under the LTD Plan that she apply for LTD benefits.   The General Administrative Information section of the Summary Plan

Description provides that the LTD Plan is administered by a third-party Claims Administrator, who is a fiduciary with the exclusive right and discretion to administer the Plan's benefits. (UHG 7, 13, 14.)  The Summary Plan Description references the Filing a Claim for Benefits section of the LTD Plan for more information on how to make a claim. (UHG 14.)  The LTD Plan's Filing a Claim for Benefits section provides:

> If [Claims Administrator] determines that your Disability may extend beyond 180 calendar days, [Claims Administrator] will provide you with the necessary forms and instruction to apply for LTD Benefits, or you can request the forms and instructions from [Claims Administrator].  You must complete the forms and return them to the addresses listed on the forms.  Your timely submission of the necessary forms will make the review of your LTD claim faster.  The review of your claim can take up to several weeks from the date the required information is received.  [Claims Administrator] will make a benefit determination and notify you in writing.

(UHG 44.)  The LTD Plan clearly requires the filing of a claim with the Claims Administrator in order to receive LTD benefits.  Under the Plan, Plaintiff had one year from the date she knew or reasonably should have known the principal facts upon which her claim is based to file an LTD claim. (UHG 14.)  Plaintiff failed to file a claim for LTD benefits during this period.

Next, Plaintiff argues that she was not required to file a claim with the Claims Administrator because she was informed that she had exhausted her administrative remedies in the August 20, 2009 letter denying her STD appeal. (D.E. 62 at 2.)  The letter states:

> As such, your claim for Short Term Disability benefits remains denied for the period from April 25, 2009 until you return to work.

> You have exhausted your appeal rights under the Plan and you have a right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended.

(UHG 166.)  The letter makes no reference to the LTD Plan or the exhaustion of her administrative remedies with respect to the LTD Plan.

Finally, Plaintiff argues that the futility exception exempts her from having to file an administrative claim for LTD benefits because her STD benefits had already been denied and the same Claims Administrator would be making a determination with regard to her LTD benefits claim. (D.E. 62 at 2.)  While the Fifth Circuit has concluded that, "under certain circumstances, plaintiffs in an ERISA case are not required to exhaust their remedies if doing so would be futile," *Harris v. Trustmark Nat. Bank*, 287 Fed. App'x 283, 295 (5th Cir. 2008) (citing *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 336 n. 61 (5th Cir. 2004)), "[a] failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (citing *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479–80 (5th Cir. 2000)). Plaintiff makes absolutely no allegations of hostility or bias on the part of the Claims Administrator; consequently, the futility exception does not apply.

The Court concludes that Plaintiff was required to file a claim for LTD benefits at the administrative level before filing an action seeking benefits in the district court and that she failed to do so.  Accordingly, in addition to being barred by the LTD Plan's contractual limitations period, Plaintiff's claim for LTD benefits is DISMISSED for failure to exhaust her administrative remedies.

## C.    Administrator's Denial of STD Benefits Did Not Constitute an Abuse of Discretion

Defendant additionally argues that Plaintiff cannot demonstrate that the Claims Administrator abused its discretion in denying her benefits under the STD Plan; and therefore, even if the Court were to find that Plaintiff's cause of action fell within the applicable statute of limitations, her claim for STD benefits must still be dismissed. (D.E. 45 at 27–35.)

ERISA authorizes a district court to review a denial of disability benefits. *See* 29 U.S.C. § 1132(a)(1)(B).  The statute does not, however, set forth a standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989).  The Supreme Court has determined that where an independent plan administrator or fiduciary has been vested with the discretionary authority to determine benefits, the district court must review the administrator's determination for abuse of discretion. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Firestone Tire & Rubber Co.*, 489 U.S. at 115.  If the district court finds that the administrator is acting under a conflict of interest, this may be weighed as a factor in the court's determination of whether there is an abuse of discretion; however, it does not change the deferential standard of review to de novo. *Metropolitan Life Ins. Co.*, 554 U.S. at 111, 115.

In the case at hand, both Plans were subject to third-party claims administration by the Claims Administrator, Sedgwick, which served as a fiduciary with respect to the Plans' beneficiaries. (UHG 7, 13, 14, 57.)  Plaintiff argues that the Plans' language granting discretion to a third-party claims administrator is ambiguous. (D.E. 62 at 2.)  The Court disagrees.  The STD Plan states that UHG is the Plan Administrator, but that it has "delegated responsibility and authority for administering claims to an unrelated third-party administrator." (UHG 57.)  Additionally, under the Claim and Appeals Procedures, the Plans state that the "Claims Administrator for each ERISA Plan is a fiduciary with respect to the applicable Plan"; and the "Claims Administrator has the exclusive right and discretion, with respect to claims and appeals, to interpret the applicable plan's terms, to administer the plan's benefits, to determine the applicable facts and to apply the plan's terms and the facts." (UHG 14.)

In determining the appropriate standard of review, the Court is guided by principles of trust law: where a plan provides a claim administrator or fiduciary discretion to determine

benefits, trust principles require a deferential standard of review. *Metropolitan Life Ins. Co.*, 554 U.S. at 111.  The fact that the Plan refers to UHG as the Plan Administrator is not determinative. The Plans make it clear that eligibility determinations are made by an independent Claims Administrator who serves as a fiduciary and owes a special duty of loyalty to the Plans' beneficiaries.  Plaintiff failed to produce any evidence that UHG was responsible for determining eligibility for benefits, or that there exists a conflict of interest on the part of the Claims Administrator. *See, e.g.*, *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1306 (5th Cir. 1994) (finding evidence of a conflict of interest where "Texaco's plan administrator was apparently also an employee of the company").  Accordingly, the proper standard of review for the Court to apply is abuse of discretion.

In the summary judgment context, to avoid reversal by the district court, the Claims Administrator's decision to terminate benefits must be supported by substantial evidence in the administrative record. *High v. E-Systems Inc.*, 459 F.3d 573, 576 (5th Cir. 2006); *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2004).  "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)).  In other words, provided the Claims Administrator's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail, even if Plaintiff's disability is supported by a preponderance of the evidence. *Id*.

Plaintiff appeals the Claims Administrator's April 25, 2009 termination of her STD benefits and August 20, 2009 denial of her appeal. (UHG 107–09, UHG 165–66.)  The Claims Administrator's denial of benefits was based on a review of the medical evidence by Dr. Howard

Sturtz, an independent physician advisor and board certified orthopedic surgeon. (UHG 104–06.)
Specifically, Dr. Sturtz reviewed the records from Plaintiff's April 22, 2009 office visit with Dr.
Jon Chancellor, Plaintiff's physician. (UHG 104, 107.)

In denying Plaintiff's appeal, an appeals specialist with the Claims Administrator, Earl
Chester, considered the medical records and progress notes submitted by Dr. Chancellor, Dr. Sue
Moss (Plaintiff's psychiatrist), and Dr. Sturtz, as well as evaluations from independent medical
specialists Dr. Jamie Lee Lewis (board certified in physical medicine and rehabilitation) and
Dr. Robert Polsky (board certified in psychiatry). (UHG 165–66.)  Moreover, the Claims
Administrator gave Plaintiff the opportunity to provide additional medical evidence to assist in
its determination. (UHG 128.)  Based on this evidence, which is set forth in the administrative
record, the Claims Administrator concluded that Plaintiff did not meet the definition of
"disabled" under the STD Plan and terminated her benefits. (UHG 166.)

Under the STD Plan, the Claims Administrator makes the determination of whether a
Plan participant is disabled. (UHG 63.)  To be considered disabled, the participant must satisfy
the following requirements:

- You have been seen face-to-face by a Physician about your Disability within 10 business days of the first day of absence related to the Disability leave of absence;
- Your Physician has provided Medical Evidence that supports your inability to perform the Material Duties of your Own Occupation;
- You are under the Regular and Appropriate Care of a Physician; and
- Your Medical Condition is not work-related and is a Medically Determinable Impairment.

(UHG 63.)  The Court concludes that the Claims Administrator's determination that Plaintiff was
not disabled was supported by substantial evidence in the record and is not arbitrary and
capricious; consequently, the denial of STD benefits did not constitute an abuse of discretion.

Dr. Lewis concluded in his report that "[f]rom a physical medicine and rehabilitation perspective, there is no objective data provided in the documentation as far as abnormalities in spinal physiology or neurologic dysfunction from a musculoskeletal or neurologic process that would suggest the patient is unable to perform her job duties from 04/25/09 to the present." (UHG 159.)  In reaching this conclusion, Dr. Lewis considered the diagnoses and complicating factors indicated by Plaintiff's treating physicians, including her depression, disc herniation, myofacial pain, carpal tunnel syndrome, and migraine headache. (UHG 159.)  In his rationale, Dr. Lewis noted a lack of medical evidence with regard to the patient's reported symptoms, and that this resulted in "very little in the way of objective findings to support a musculoskeletal impairment." (UHG 159.)

In his report, Dr. Polsky found that "there is not objective medical information in the medical records nor from the teleconference [with Dr. Moss] which would support [Plaintiff's] complete inability to perform her regular job from 04/25/09 through the present." (UHG 151.) Accordingly, Dr. Polsky concluded that Plaintiff was not disabled and that there were no medically supported restrictions/limitations that should be placed on her work. (UHG 151–52.) In his rationale, Dr. Polsky noted that there was no documentation in the record demonstrating that Plaintiff was suicidal, parasuicidal, homicidal, manic, or psychotic; and that there was no indication demonstrated by the mental status examination findings that memory, cognition, or concentration were impaired. (UHG 152.)  Consequently, there was insufficient clinical support to substantiate a global impairment of functioning that would preclude Plaintiff from performing her job duties during the period under review. (UHG 152.)

The record additionally contains a letter from Dr. Chancellor, Plaintiff's primary physician, written on or about June 19, 2009, apparently in response to Sedgwick's April 25,

2009 determination of ineligibility. (UHG 130.)  The letter was based on a June 8, 2009 office

visit, and therein, Dr. Chancellor lists Plaintiff's primary problem as her depression. (UHG 130.)

Dr. Chancellor indicates that it is his opinion Plaintiff could return to work on a limited schedule.

(UHG 130.)  The letter, however, fails to provide any objective medical evidence to support a

finding that Plaintiff was unable to perform the material duties of her occupation.

The record additionally contains a letter from Dr. Moss dated June 10, 2009. (UHG 137.)

Dr. Moss indicates that Plaintiff should be able to return to occupational functioning soon from a

psychiatric perspective, but defers to Plaintiff's primary care physician regarding any decisions

on occupational functioning. (UHG 138.)  Again, the letter fails to provide any objective medical

evidence to support a finding that Plaintiff was unable to perform the material duties of her

occupation.

To be considered disabled, Plaintiff was required to provide medical evidence supporting

her inability to perform the material duties of her own occupation.  Medical evidence is defined

as clear documentation of functional impairments and functional limitations resulting from a

medically determinable impairment that would prevent Plaintiff from performing the material

duties of her occupation safely and adequately. (UHG 72.)   A medically determinable

impairment is defined as an anatomical, physiological, or psychological abnormality which can

be shown by medically acceptable clinical and laboratory diagnostic techniques. (UHG 72.)  This

requires medical evidence consisting of signs, symptoms, and laboratory findings—not simply

an individual's statement of symptoms. (UHG 72.)

The Court found little or no medical evidence in the administrative record to support a

finding of disability at the time Plaintiff's STD benefits were terminated, and the letters from

Plaintiff's physicians are, at best, inconclusive with regard to whether Plaintiff was unable to

perform the material duties of her occupation after April 25, 2009.  The administrative record demonstrates that Plaintiff had a temporary disability from which her physicians anticipated she would recover in a short period of time. (UHG 212, 378.)  There were no clinical or laboratory diagnostic techniques performed by Plaintiff's physicians demonstrating that she was disabled after April 25, 2009.  The letters by Plaintiff's physicians, Dr. Chancellor and Dr. Moss, generally describe her medical history and her stated symptoms and maladies, but they do not provide any objective evidence of a disability.

The Court concludes that the Claims Administrator's decision was supported by substantial evidence in the administrative record and was not arbitrary and capricious.  As stated in the letter denying Plaintiff's appeal, there was simply insufficient clinical support to substantiate a global impairment of functioning precluding Plaintiff from performing her job duties after April 25, 2009. (UHG 166.)

Plaintiff argues that the Claims Administrator failed to seek out additional evidence or conduct additional medical tests and evaluations to determine if Plaintiff was disabled; however, this improperly places the burden on the Claims Administrator.  "Claimants must present their strongest available case to the plan administrator, because the primary decision is made at that point." *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994).  Plaintiff cannot circumvent her burden at the administrative stage by arguing that the Claims Administrator should have sought out additional evidence supporting her disability. *Id*.  Moreover, Plaintiff's assertion that additional medical evidence concerning her disability exists outside of the administrative record is inappropriate.  Congress intended the district courts to merely review the decisions of the plan administrators, not to take additional evidence and make independent disability determinations. *Id*. at 1309, n. 7.  Plaintiff cannot reopen her administrative proceedings before this Court.

Plaintiff was required to submit her physician's reports, MRI scans, test results, and other relevant medical evidence to the Claims Administrator for evaluation. Her failure to do so must result in a denial of her claim. *Id.* at 1309.

Based on the evidence in the record, the Court concludes that the Claims Administrator's determination of ineligibility did not constitute an abuse of discretion. *See Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (concluding that the administrator's review of the claim "constitutes enough of a 'rational connection between the known facts and the decision' to survive arbitrary and capricious review"). Accordingly, in addition to being barred by the STD Plan's contractual limitations period, Plaintiff's claim for STD benefits is DISMISSED for failure to demonstrate an abuse of discretion.

**D.     Breach of Fiduciary Duty Claim Is Duplicative**

A claim for breach of fiduciary duty may be asserted under either Section 1132(a)(2) or Section 1132(a)(3) of Title 29. Plaintiff does not identify under which section she seeks relief. Section 1132(a)(2) provides a plan participant or beneficiary with a cause of action for equitable relief under Section 1109 of Title 29. Under Section 1109, a fiduciary may be held personally liable to the plan for a breach of his fiduciary duties to the plan. There is no indication in the First Supplemental Complaint that Plaintiff asserts a cause of action on behalf of the Plan. Accordingly, the Court concludes that Plaintiff's breach of fiduciary duty claim arises under Section 1132(a)(3).

Defendant argues that Plaintiff's breach of fiduciary claim under 29 U.S.C. §§1132(a)(3) is nothing more than a repackaged denial of benefits claim which must be dismissed as duplicative. (D.E. 45 at 36.) In *Varity Corp. v. Howe*, 516 U.S. 489, 510–15 (1996), the Supreme Court concluded that an ERISA plaintiff may not bring a claim for breach of fiduciary

duty where adequate relief for a beneficiary's injury is provided elsewhere in Section 1132, and therefore, equitable relief is not necessary. *See also Rhorer v. Raytheon Eng'rs and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999), *abrogated on other grounds by CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011); *Burns v. Orthotek Inc. Emps. Pension Plan and Trust*, No. 3:08-cv-00190, 2009 WL 631245, at *4 (Mar. 11, 2009) (concluding that "a plaintiff may not bring both a § 502(a)(3) claim for breach of fiduciary duty and a § 502(a)(1)(B) claim for wrongful denial of benefits" as such claims are duplicative).  The Court concludes that where a breach of fiduciary duty claim is based solely on an alleged denial of plan benefits, as in the case at hand, this claim is duplicative of a denial of benefits claim.

Plaintiff argues that the above line of cases do not apply to the case at hand because the fiduciary failed to provide Plaintiff the Plan documents when requested; that is, Plaintiff argues her breach of fiduciary duty claim is not a claim for failure to provide benefits, but is based on Defendant's failure to provide the requested Plan documents. (D.E. 62 at 31.)  Yet, there is no mention of this in the First Supplemental Complaint.  Plaintiff alleges that "defendant breached their fiduciary duty by denying her disability benefits." (D.E. 34 ¶ 25.)  Additionally, Plaintiff alleges that "defendant breached their fiduciary duty on August 20, 2009, when they denied the plaintiff her STD benefits." (D.E. 34 ¶ 25.1.)  There are no allegations in Plaintiff's breach of fiduciary duty cause of action relating to a failure to provide Plan documents.  The first time Plaintiff makes this assertion is in her response. (D.E. 62 at 31.)  "A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).   Accordingly, Plaintiff's cause of action for breach of fiduciary duty is DISMISSED as duplicative.

**E.      Non-Disclosure Cause of Action Under 29 U.S.C. § 1132(c)(1)**

In the First Supplemental Complaint, Plaintiff asserts that Defendant is liable under ERISA Section 1132(c)(1) for failing to provide Plaintiff copies of the STD and LTD Plans, Plan amendments, and/or a summaries of the Plans despite two written requests sent to UHG on March 16, 2011 and August 25, 2011, and one written request sent to the Claims Administrator on April 19, 2010, which was forwarded to UHG on May 10, 2010. (D.E. 34 ¶¶ 31–33.)

Defendant claims that UHG was not aware of the letters that Plaintiff sent to it by certified mail until Plaintiff filed the letters as attachments to her response to Defendant's motion to dismiss. (See argument at D.E. 45 at 40; attachments available at D.E. 22-1 at 21–25.) Defendant also asserts that it produced the STD and LTD Plans on July 26, 2012. (D.E. 45 at 41.)  However, this was more than two years after Plaintiff allegedly made her original requests for the Plans.   Finally, Defendant asserts that Plaintiff was not prejudiced by Defendant's failure to disclose the Plans because Plaintiff had access to the Plans online through HRDirect. (*Id*. at 42.)

The ERISA reporting and disclosure rule is very straightforward regarding the disclosure requirements of the Claims Administrator: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).  This disclosure provision is enforced through a statutory penalty of up to $100 per day for any administrator who fails to provide the requested information. *See* 29 U.S.C. § 1132(c)(1)(B). There is no knowledge or intent requirement to a Section 1132(c)(1) claim, nor is Plaintiff required to demonstrate prejudice.  Congress's purpose in enacting this section was to ensure that

20

"the individual participant knows exactly where he stands with respect to the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 116–18 (1989) (quoting H.R. Rep. No. 93-533, p. 11 (1973)).  This requires strict compliance with the section's disclosure provisions.

The Court finds Defendant's arguments unavailing regarding its failure to timely furnish Plaintiff with a copy of the STD and LTD Plans.  At a minimum, the evidence presents genuine issues of material fact precluding summary judgment.  Defendant additionally argues that courts rarely award the statutory maximum penalty of $100 per day, and even if the Court finds that UHG did not provide the STD and LTD Plans to Plaintiff, an award of penalties should be denied. (D.E. 45 at 41–43.)  However, damages are an issue for trial, not summary judgment. Accordingly, Defendant's motion for summary judgment is DENIED with regard to Plaintiff's Section 1132(c)(1) cause of action for failure to provide Plaintiff copies of the Plans.

**F.    ERISA Criminal Violations**

Plaintiff argues that Defendant should be held criminally liable for willfully omitting or failing to perform reporting or disclosure required by ERISA, making a false statement or representation of fact knowing it to be false, or knowingly concealing, covering up, or failing to disclose a fact whose disclosure is required by ERISA in violation of 18 U.S.C. § 1027 and 29 U.S.C. § 1131(a). (D.E. 34 ¶¶ 34, 35.)  Plaintiff asserts that these criminal violations occurred when Plaintiff purposefully withheld the STD and LTD Plans and the summary of the Plans from Plaintiff. (D.E. 34 ¶ 34.)

Defendant argues that there is no evidence in the record that the alleged failure to disclose the Plans was knowing or that Defendant willfully violated ERISA's disclosure provisions. (D.E. 45 at 43–44.)  Yet, the Court finds a more fundamental flaw with the alleged criminal violations.   Plaintiff lacks standing to bring a claim for criminal violations under

ERISA. *West v. Butler*, 621 F.2d 240, 244 (6th Cir. 1980) (enforcement of ERISA's criminal provisions "is the exclusive prerogative of the Attorney General"); *Dickerson v. Mutual of America*, 703 F. Supp. 2d 283, 294–95 (S.D.N.Y. 2010) (citing 29 U.S.C. §§ 1136, 1204(b)); 60A Am. Jur. 2d *Pensions* § 798 (2009).   Accordingly, Plaintiff's cause of action asserting criminal penalties for violations of 18 U.S.C. § 1027 and 29 U.S.C. § 1131 is DISMISSED.

## G.    Estoppel Claim

Plaintiff asserts for the first time in her response that Defendant should be estopped from denying Plaintiff's STD and LTD benefits claims because Defendant allegedly represented to her that she would be granted STD and LTD benefits if she were awarded Social Security benefits. (D.E. 62 at 12.)   Plaintiff was awarded Social Security benefits by the Social Security Administration after she appealed the denial of her STD benefits. (UHG 219–22.)   Plaintiff cannot, however, assert a claim for the first time on summary judgment.   "A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera*, 429 F.3d at 113.   Accordingly, Plaintiff has no valid estoppel claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Complete Summary Judgment (D.E. 45) is GRANTED IN PART and DENIED IN PART.   Plaintiff's civil claim for statutory non-disclosure penalties under 29 U.S.C. § 1132(c)(1) is RETAINED.   Plaintiff's remaining causes of action are DISMISSED WITH PREJUDICE.

ORDERED this 15th day of July 2013.

**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**